**Commonwealth v. Casey**

*Shane Crosby, assistant district attorney,* for Commonwealth.

*Thomas Nell,* for defendant.

GEORGE, *J.,* October 19, 2007—The defendant, Monica Y. Casey, appeals from this court's denial of her PCRA petition on July 30, 2007. Casey challenges this court's finding that her December 27, 2005 acknowledgement of violating the conditions of her sentences of intermediate punishment was knowingly and voluntarily entered.[1] Casey also challenges this court's determination that she was not denied effective assistance of counsel based upon a claim of counsel providing misinformation to her.

The history of this matter involves a significant number of separate cases involving numerous proceedings. Although having a prior criminal record for conviction of theft by unlawful taking in Lancaster County, Casey's involvement with the Adams County Court of Common

---

1. Although Casey raises this issue in her concise statement of matters complained of on appeal as a challenge to the knowing and voluntary entry of her "plea", it is clear that her original pleas of guilty are not the subject of this PCRA petition. Rather, the PCRA petition focuses upon the revocation proceedings.

Pleas did not begin until in 2000 when she was charged with a variety of misdemeanors of the first degree. On January 5, 2001, she pled guilty to 17 separate counts of bad checks as a misdemeanor of the first degree. She also pled guilty to a count of theft by deception as a misdemeanor of the first degree. Shortly thereafter, on August 13, 2001, she pled nolo contendere to two counts of aggravated assault as felonies of the second degree. On the theft by deception conviction, Casey was sentenced to one to two years in a state correctional institution. On the 17 convictions for bad checks, Casey was sentenced to four years of intermediate punishment to run concurrently with each other, however, the four years were to be served consecutively to the sentence imposed for the theft by deception conviction. All of the intermediate punishment was ordered to be served on probationary phases III through V. On the aggravated assault convictions, former President Judge Oscar Spicer sentenced Casey under the mitigated guidelines to five years of intermediate punishment, all of which was to be served on probationary phases and run concurrent to Casey's other sentences.

On March 21, 2003, Casey admitted violating the conditions of her sentences. The violations included, among other things, the commission of additional criminal offenses. She was re-sentenced by President Judge John Kuhn to aggregate, concurrent sentences of 60 months of intermediate punishment with 90 days on phase I (partial confinement). Additionally, on August 11, 2003, she entered a guilty plea to theft by deception as a misdemeanor of the first degree and on December 22, 2003, she entered guilty pleas to nine additional

charges of writing bad checks, three of which were misdemeanors of the first degree and the six others being misdemeanors of the second degree. On each of the convictions, Casey was sentenced to sentences of intermediate punishment by President Judge John Kuhn which ran concurrent to the sentences imposed as a result of the March 21, 2003 revocation.

On April 13, 2005, Casey pled guilty to possession of drug paraphernalia in York County. On that same date, she entered guilty pleas to 11 charges of theft, one charge of false identification to a police officer and one count of false impersonation. Guilty pleas resulted in a revocation proceeding held before this court on December 27, 2005 at which time Casey acknowledged violating the conditions of her supervision. Sentencing occurred on March 17, 2006 at which time Casey was sentenced to the aggregate sentence of four and a half to 10 years. At the time of sentencing, Casey was advised that the reasons for the sentence included Casey's failure to take advantage of rehabilitative efforts by local authorities as well as the court's concern for the protection of the community, taking into account her numerous criminal offenses committed subsequent to the original sentences in this matter.

Undoubtedly, PCRA relief is available following a revocation proceeding which resulted in a new sentence being imposed. *Commonwealth v. Ballard,* 814 A.2d 1242, 1244 (Pa. Super. 2003). One seeking post conviction relief on the basis of an alleged unknowing or involuntary admission bears the burden of proving by a preponderance of the evidence that the admission was involuntary and unknowingly entered. *Commonwealth*

*v. Carter,* 318 Pa. Super. 252, 264, 464 A.2d 1327, 1334 (1983). Instantly, Casey challenges the voluntariness of her admission of violations of intermediate punishment claiming that plea counsel advised her, prior to the admissions, that she would receive concurrent sentences. At hearing, however, Casey failed to present any testimony in support of this claim. Perhaps the reason that evidence was lacking in this regard is because the claim is refuted by the record. Prior to her December 27, 2005 acknowledgement, the court advised Casey of the following:

"Ms. Casey, you have an absolute right to a hearing in this matter. At that hearing the Commonwealth would be required to prove by a preponderance of the evidence that you violated the conditions of your intermediate punishment. If they are able to do so, you may be revoked and re-sentenced.

"You are serving a number of different sentences at this point. It appears you are serving 22 misdemeanors of the first degree, sentences on convictions for misdemeanors of the first degree, and two sentences on convictions for felonies of the second degree.

"If you are revoked from the intermediate punishment, you may be re-sentenced on each of those cases. The misdemeanors of the first degree carry with them maximum sentences of five years in jail and maximum fines of $10,000. The felonies of the second degree carry maximum sentences of 10 years in jail and fines up to $25,000.

"If those sentences are all run consecutive, by consecutive I mean following each other, that means that

your supervision or your sentence may total 130 years and fines up to $170,000." Transcript of proceedings of December 27, 2005, pp. 4-5.

Later, during that same colloquy, the court inquired as follows:

"The Court: Have you had enough time to talk to Ms. Rice about your decision to acknowledge today?

"The Defendant: Yes.

"The Court: Is there anything you wanted her to do on your behalf which she has not done?

"The Defendant: No.

"The Court: Are you satisfied with her representation?

"The Defendant: Yes.

"The Court: Are you making these admissions of your own free will, ma'am?

"The Defendant: Yes.

"The Court: Has anybody promised you anything in exchange for these admissions?

"The Defendant: No.

"The Court: Has anybody threatened you in any way to acknowledge the violations?

"The Defendant: No.

"The Court: Anybody promised you or threatened you in any way to give up your right to a hearing?

"The Defendant: No.

"The Court: Are you doing so because it is true that you have been convicted in York County of 11 separate criminal offenses?

"The Defendant: Yes.

"The Court: You also used cocaine while on supervision?

"The Defendant: Yes.

"The Court: You also failed to report as directed?

"The Defendant: Yes." Transcript of December 27, 2005, pp. 7-8.

As Casey has failed to present any credible evidence supporting her allegation that her counsel misled her in regard to the ramifications of her acknowledgement of intermediate punishment violations, PCRA relief is inappropriate on this basis.

Casey's second claim suffers from similar deficiency. Casey argues that her counsel was ineffective in misinforming her regarding the nature of the sentence imposed by the court thereby precluding her from a meaningful opportunity to exercise her appellate rights. Once again, Casey has failed to present credible evidence in support of her claim. At hearing, Casey essentially indicated that she "blacked out" during the sentencing proceeding and had no understanding as to the sentence imposed. Lacking in her testimony, however, was a claim that counsel misinformed her concerning the nature of her sentence. This court found her testimony to be both self-serving and incredible.

Moreover, the testimony is contrary to indications in the record. A review of the sentencing colloquy reveals

that Casey interacted intelligently and rationally to conversation with both the court and counsel. Importantly, the record reveals acknowledgement by Casey that she understood the parameters of her sentence. Specifically, after Casey was advised of her post-sentence rights, the following exchange occurred:

"The Court: Do you have any questions about any of that, ma'am?

"The Defendant: How many years did you give me?

"The Court: Four and a half to 10.

"The Defendant: At Muncy?

"The Court: Yes.

"The Defendant: So you have just took 10 years of my life." March 17, 2006 transcript, p. 15.

Since Casey failed, after hearing, to present any testimony in support of her claims, she has not properly proven any grounds alleged for PCRA relief. Moreover, the court discredited her limited testimony as self-serving. As such, she has failed to carry her burden of establishing grounds for relief by a preponderance of the evidence. A review of the proceedings reflects an intelligent and knowingly entered acknowledgement after opportunity to consult with counsel. The underlying factual basis for the finding of the violations of her sentence of intermediate punishment is undeniable as her convictions while serving sentence are unquestioned. Moreover, the record reveals that the court rejected the Commonwealth's recommendation and exercised restraint in re-sentencing Casey. In light of her inability to be rehabilitated despite numerous attempts and the dan-

ger which she presents to society as evidenced by her continued recidivism, Casey's sentence is not unreasonable. Accordingly, it is respectfully requested that the appeal in this matter be dismissed.