J-S03010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BILLY RAY BOGGS, JR. | : | |
| | : | |
| Appellant | : | No. 503 WDA 2019 |

Appeal from the PCRA Order Entered March 1, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002500-2015

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                   FILED APRIL 30, 2020

Billy Ray Boggs, Jr. appeals pro se from the denial of his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The PCRA court concluded that the issues presented in Boggs' PCRA petition were meritless. We affirm.

We have gleaned the facts and the procedural history of this case from the trial court's opinions and from the certified record. On March 30, 2015, Boggs hit 34-year-old Thomas Guercio in the head with a hammer after an argument regarding Boggs' sister. Guercio was rendered unconscious but did not die from the initial attack. However, Boggs returned sometime later,

_____

[*] Retired Senior Judge assigned to the Superior Court.

struck the victim again in the head with a hammer and stabbed him in the chest with a knife. This time the victim died.

In connection with this crime, Boggs pled guilty to first-degree murder, third-degree murder, and abuse of a corpse on September 11, 2015.[1] During his plea hearing, the court conducted a comprehensive colloquy beginning with Boggs' guilty plea counsel, Brian Aston, Esquire:

> COURT: Mr. Aston, I see that you have submitted a guilty plea petition. I will have that marked Defense Exhibit A. Have you had sufficient time to review that petition with your client and does he understand his trial rights and his appeal rights?
>
> ASTON: I believe that I have had sufficient time, I believe that he does know his rights and I believe I have answered all the questions that he may have, Your Honor.
>
> COURT: And have talked to him about the possibility of going to trial and how you would proceed and any possible defenses if you would go to trial in this matter?
>
> ASTON: Yes, Your Honor.
>
> COURT: Have you talked to him about character witnesses and how you could possibly use character witnesses?
>
> ASTON: Yes, Your Honor.
>
> COURT: And do the feel that he knowingly, intelligently and voluntarily is entering this plea today?
>
> ASTON: Yes, Your Honor.
>
> COURT: And, Mr. Aston, is there anything that Mr. Boggs had asked you to do or investigate or pursue that you have either been unable to do or determine that you should not do?

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), and 5510, respectively.

ASTON: No, Your Honor.

COURT: Okay. And do you stipulate the facts set forth in the Criminal Information form a basis for the charges?

ASTON: I will so stipulate, Your Honor.

N.T., 9/11/15 at 25-27.

The court continued by conducting the following exchange with Boggs:

COURT: And sir, do you understand your trial rights and your appeal rights as contained in the guilty plea petition?

[BOGGS]: Yes, ma'am.

COURT: Do you have any questions at all, sir, about any of those rights?

[BOGGS]: No, ma'am.

COURT: And is there anything at all that you would have liked Mr. Aston to do that he has not done for you or investigated for you?

[BOGGS]: No, ma'am, he did very well.

* * *

COURT: Do you understand, Mr. Boggs, at all three counts what you're pleading guilty to, what the Commonwealth would have to prove if you went to trial and what the maximum penalties could be?

[BOGGS]: Uh-huh. Yes, ma'am.

COURT: And why are you pleading guilty today, sir?

[BOGGS]: Why?

COURT: Yes.

[BOGGS]: It's my retirement fund. I'm 50 years old. Even if I fight it I owe the Parole Board 8 years, so even if I get sentenced to get out at 65, 70 years old it's -I can't imagine it. Also, just to save them a little bit of trouble that was going to come out during trial.

- 3 -

Id. at 27-29.

Aston also questioned Boggs about his intention to plead guilty as follows:

> ASTON: Sir, we've talked about this moment the night before last down at the county jail, is that correct?
>
> [BOGGS]: That's correct.
>
> ASTON: Actually, you're the individual who had indicated that you were desirous of entering the plea?
>
> [BOGGS]: That's correct.
>
> ASTON: You brought that matter up to me and I took that to [the District Attorney]?
>
> [BOGGS]: That's correct.

Id. at 30.

The court continued questioning Boggs:

> COURT: Mr. Boggs, has anybody threatened you or promised you anything for you to plead guilty?
>
> [BOGGS]: No.
>
> COURT: And I take it, then, it sounds to me that you're doing this of your own free will. It was your idea. Is Mr. Aston correct that you told him that you wanted to do this?
>
> [BOGGS]: Yes. I feel bad for the family. 100 percent. I truly do. Tommy, to me, was the most evil person I ever met.
>
> * * *
>
> COURT: I just have a couple more questions. Mr. Boggs are you taking any medication right now?
>
> [BOGGS]: No.
>
> COURT: And I know that you're incarcerated but I will ask you anyway. Have you consumed any drugs or alcohol in the last 48 hours?
>
> [BOGGS]: I wish but, no.

COURT: And also, are you having any physical health problem-

[BOGGS]: No.

COURT: . . . Any mental health problems right now?

[BOGGS]: No.

COURT: So you are fully aware of what you're doing?

[BOGGS]: Yes, ma'am.

Id. at 40-42.

After the trial court's colloquy, guilty plea counsel Aston asked Boggs:

ASTON: You understand your appeal rights, correct?

[BOGGS]: Yes, sir.

ASTON: And you understand that I'm not filing an appeal on your behalf because it is your desire to plead and –

[BOGGS]: I requested it and you've done very well in doing what I requested so I will not file the appeal. Thank you very much.

Id. at 48-49.

Boggs also submitted a written guilty plea "petition" in which he stated, among other things, that no threats against him had caused him to plead guilty. After Boggs entered his guilty plea, the trial court sentenced him to life in prison without the possibility of parole. Boggs did not file a direct appeal but did file a timely, pro se, PCRA petition on August 12, 2016. The PCRA court appointed Emily Smarto, Esquire to represent Boggs. On November 4, 2016,

Smarto filed a Turner/Finley[2] letter but she did not file a motion to withdraw as counsel. The PCRA court filed Pa.R.Crim.P. 907 notice of intent to dismiss Boggs' PCRA petition and Boggs filed a response. The PCRA court held an evidentiary hearing on June 2, 2017 ("first evidentiary hearing"). At this hearing, guilty plea counsel Aston testified that Boggs never contacted him regarding a desire to withdraw his guilty plea. N.T., 6/2/17 at 36-37. Aston stated that he "received no correspondence or message in any manner" from Boggs. Id. at 36. Further, Aston indicated that the death penalty had never been a consideration in Boggs' decision to plead guilty:

> COURT: At any time did Mr. Peck tell you that he would only forego filing aggravating circumstances if your client agreed to plead first?
>
> Aston: No, your Honor, that was never a consideration. It was never a bargaining chip. He simply indicated in front of Judge Feliciani that he was considering filing the aggravating circumstances to make it a capital case. We awaited that decision. Once informed that he was not filing the aggravated circumstances I met with Mr. Boggs and informed him of that and the plea was scheduled in front of Your Honor.

Id. at 15-16.

At the first evidentiary hearing, Boggs indicated that he wanted to proceed pro se. The PCRA court denied the request. After the court denied Boggs' PCRA petition on July 12, 2017, a Grazier[3] hearing was held wherein

_____

[2] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988) (en banc).

[3] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

the trial court permitted Smarto to withdraw and Boggs to proceed pro se. Boggs appealed pro se the denial of his PCRA petition to this Court. On October 22, 2018, our Court issued a memorandum decision vacating and remanding the case to allow Boggs to proceed pro se. Commonwealth v. Boggs, 1178 WDA 2017 (unpublished memorandum) (Pa.Super. filed Oct. 22, 2018).

The PCRA court conducted another evidentiary hearing on December 13, 2018 ("second evidentiary hearing"). At the second evidentiary hearing, pro se Boggs indicated that he had subpoenaed three witnesses to testify concerning Boggs' mental health issues at the time of his guilty plea: (1) Dr. Lanny Detore, who Boggs contended could testify regarding his mental health issues because he examined him in 2012 in connection with a Social Security disability claim; (2) James Potts, a fellow inmate who fed Boggs while he was in protective custody about a month before Boggs pled guilty; and (3) Ms. Karp, a psychologist who treated Boggs while incarcerated following his sentencing. None of these witnesses attended the second evidentiary hearing N.T., 12/13/18, at 13-16. Further, the PCRA court denied Boggs' request to enter the 2012 written report of Dr. Detore into evidence because, inter alia, the court found the 2012 report was not relevant to Boggs' mental health status in 2015, when he entered his guilty plea. Id.

At the second evidentiary hearing, plea counsel Aston and District Attorney Peck testified regarding the sequence of events surrounding the Commonwealth's decision not to pursue the death penalty in this case. Both witnesses testified that Boggs was aware that the Commonwealth was not

seeking the death penalty prior to his guilty plea on September 15, 2015. Id. at 4-6; 42-43. Specifically, Aston testified that Boggs intended to plead guilty on August 25, 2015, when his case was initially scheduled to be heard before the trial court. Id. Hence, on that date, Aston indicated to the court that Boggs was prepared to plead guilty. Id. However, District Attorney Peck stated that he was not prepared to go forward on that date due to the need to consult with the victim's family about possible aggravating circumstances. District Attorney Peck told Aston sometime after the August 2015 hearing, but before Boggs' September 2015 guilty plea, that he did not intend to pursue the death penalty. Id. Aston told Boggs that the Commonwealth was not intending to pursue the death penalty before Boggs entered his guilty plea. Id.

After the second evidentiary hearing, the PCRA court dismissed Boggs' PCRA petition on March 1, 2019, via an opinion and order. Boggs filed the instant timely appeal and court ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a responsive Pa.R.A.P. 1925(a) opinion.

Boggs raises the following issues on appeal (reproduced verbatim):

1. PCRA court erred in not allowing [Boggs] to call the witnesses on his behalf at the December 13, 2018 evidentiary hearing as well as the PCRA court relied on the courts own indicia in regards to [Boggs'] mental health at the time of the plea[.]

2. PCRA court erred in not finding defense counsel ineffective for not filing a direct appeal and not withdrawing [Boggs'] plea[.]

3. PCRA court erred and committed an abuse of discretion by not allowing the district attorney to be sworn and

properly questioned at the December 13, 2018 evidentiary hearing[.]

4. Ineffective assistance of counsel in the defense counsel induced [Boggs] to plead guilty by the use of the death penalty rendering the plea unintelligently and involuntarily[.]

5. Ineffective assistance of counsel in that defense counsel failed to withdraw [Boggs'] plea and file a direct appeal on behalf of [Boggs.]

6. Ineffective assistance of counsel for relying on his own indicia in regards to [Boggs'] mental health at the time of plea and incident[.]

7. Ineffective assistance of counsel for failing to conduct any investigation for [Boggs'] defense[.]

8. [Boggs] was denied due process of law[.]

Boggs' Br. at 5-9.[4]

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." Commonwealth v. Wilson, 824 A.2d 331, 333 (Pa.Super. 2003) (en banc). Further, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this court." Commonwealth v. Spotz, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

In his first issue, which is thinly developed, Boggs appears to contend that the PCRA court erred by failing to allow him to call witnesses on his own

_____

[4] We note that Boggs' failed to include a statement of questions involved as required under Pa.R.A.P. 2111(a)(4). However, because our review is not hampered by this omission, we decline to find waiver.

behalf during the second evidentiary hearing. He points to Dr. Detore's 2012 Social Security report as critical to establishing his lack of mental competence at the time of his guilty plea in 2015, and asserts that the PCRA court erred by determining that such report lacked relevance. We disagree.

Trial courts have "broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." Commonwealth v. Huggins, 68 A.3d 962, 966 (Pa.Super. 2013) (citing Commonwealth v. Cook, 676 A.2d 639, 647 (Pa. 1996)). Further, relevant evidence is admissible unless "otherwise provided by law." Commonwealth v. Cook, 952 A.2d 594, 612 (Pa. 2008) (quoting Pa.R.E. 402). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Pa.R.E. 401(a).

Here, Boggs' contention that, at the second evidentiary hearing, the PCRA court did not allow him to present testimony regarding his mental condition at the time of his plea hearing is belied by the record. Boggs failed to produce any of the three of the witnesses he contended would testify about his mental health. Further, we conclude that the PCRA court did not abuse its discretion when it denied Boggs' request to admit Dr. Detore's 2012 Social Security report. See Huggins, 68 A.3d at 966. The court properly decided to exclude the 2012 report because, among other things, the report would not shed light on Boggs' mental state in 2015, when he entered his guilty plea. See Pa.R.E. 401(a). Thus, Boggs first claim is devoid of merit.

In his second and fifth issues, Boggs contends that his plea counsel was ineffective for failing to file a post-sentence motion to withdraw his guilty plea or a direct appeal on his behalf. Boggs asserts that on the same day he entered his guilty plea, he changed his mind and wrote a letter to Aston requesting to withdraw his plea. Further, Boggs argues that because Aston did not file a petition to withdraw and thus remained his counsel at the relevant time, he was required to file both a post-trial motion and direct appeal on his behalf.

All constitutionally recognized ineffectiveness claims, including those arising where the defendant has pleaded guilty, are cognizable under the PCRA. Commonwealth ex rel. Dadario v. Goldberg, 773 A.2d 126, 130 (Pa. 2001); Commonwealth v. Kelley, 136 A.3d 1007, 1012 (Pa.Super. 2016). Counsel is presumed to be effective. Commonwealth v. Lesko, 15 A.3d 345, 374 (Pa. 2011). Thus, a petitioner claiming ineffective assistance of counsel must plead and prove all of the following: (1) the underlying claim is of arguable merit; (2) counsel's inaction or action lacked a reasonable basis; and (3) counsel's ineffectiveness caused the petitioner prejudice. Commonwealth v. Keaton, 45 A.3d 1050, 1060 (Pa. 2012). Prejudice occurs, in the context of a guilty plea, only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea. Commonwealth v. Moser, 921 A.2d 526, 531 (Pa.Super. 2007).

However, "the unjustified failure to file a requested direct appeal is ineffective assistance of counsel per se and . . . an appellant need not show that he likely would have succeeded on appeal in order to meet the prejudice

prong of the test for ineffectiveness." Commonwealth v. Bath, 907 A.2d 619, 622 (Pa.Super. 2006). To determine whether counsel is ineffective for failing to file a direct appeal, the court must determine whether the defendant established that "he requested an appeal and that counsel disregarded that request." Bath, 907 A.2d at 622 (quoting Commonwealth v. Knighten, 742 A.2d 679, 682 (Pa.Super. 1999)).

In the case sub judice, the PCRA court did not find Boggs' contention that he immediately requested to withdraw his guilty plea to be credible, and the record supports that determination. Guilty plea counsel Aston testified that he never received any communication from Boggs asking to withdraw his guilty plea and the PCRA court found that testimony to be credible. Accordingly, we conclude that the PCRA court properly concluded that plea counsel was not ineffective for failing to file a post-trial motion to withdraw Boggs' guilty plea because it found as a fact that Boggs did not ask counsel to do so. See Spotz, 18 A.3d at 259.

Likewise, the PCRA court also determined that plea counsel was not ineffective for failing to file a direct appeal because Boggs failed to prove that he requested the appeal and counsel disregarded the request. See Bath, 907 A.2d at 622. The record supports the PCRA court's conclusion. Plea counsel testified that he never received any such request from Boggs, and the PCRA court believed that testimony. Indeed, Boggs never presented any evidence to the contrary. See Spotz, 18 A.3d at 259. The trial court properly found that guilty plea counsel was not ineffective for failing to file a requested direct

- 12 -

appeal. Bath, 907 A.2d at 622. Thus, Boggs' second and fifth issues also must fail.

In his third issue, Boggs presents a single paragraph of poorly developed argument seemingly contending that the PCRA court erred during the second evidentiary hearing by allegedly preventing District Attorney Peck from testifying fully and by failing to properly administer an oath to Peck. However, a review of the second evidentiary hearing transcript reveals that Peck did, in fact, testify and gave comprehensive answers to Boggs' questions. Further, while the PCRA court did not administer an oath to District Attorney Peck prior to his testimony, Boggs did not lodge an objection at that time. Accordingly, Boggs waived the instant issue. See Tecce v. Hally, 106 A.3d 728, 732 (Pa.Super. 2014) ("Pennsylvania's appellate courts have held, without apparent exception, that the failure to object to unsworn testimony subjects a litigant to waiver"). Thus, Boggs' third issue also warrants no relief.

Turning to Boggs' fourth issue, he claims that guilty plea counsel was ineffective because he coerced him into pleading guilty by threatening him into believing that he would be subject to the death penalty if he did not do so. He baldly asserts that guilty plea counsel Aston and District Attorney Peck colluded to unlawfully induce him into pleading guilty. Once again, the record contradicts Boggs' contentions.

"[A] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." Commonwealth v. Carter, 464 A.2d 1327, 1334 (Pa.Super. 1983) (citation omitted). However, in the instant case,

Boggs' guilty plea colloquy, as well as the testimony adduced at both the first and second evidentiary hearings, demonstrated that Boggs was not unlawfully forced by guilty plea counsel to plead guilty under threat of the death penalty. First, Boggs indicated at his plea hearing that he was pleading guilty voluntarily and viewed it as his "retirement fund" because he was concerned he already "ow[ed] the Parole Board 8 years." N.T., 9/11/15 at 29. Moreover guilty plea counsel Aston testified that Boggs strongly indicated to him the desire to plead guilty prior to his initial court date in August 2015. N.T., 12/13/18 at 42-43. Aston stated that it was only at the time of that initial hearing that both he and Boggs learned that District Attorney Peck might seek the death penalty. Id.

However, Aston testified that the District Attorney subsequently told him that the Commonwealth would not pursue the death penalty in Boggs' case. Id. According to Aston's testimony, he promptly told Boggs this development and Boggs knew the death penalty was not under consideration when he ultimately pled guilty in September 2015. Id. Thus, Aston asserted that the death penalty was not used as a "bargaining chip" to get Boggs to plead guilty. N.T., 6/2/17 at 15-16. Moreover, District Attorney Peck, in his testimony at the second evidentiary hearing, confirmed that he did not collude with guilty plea counsel Aston regarding the death penalty and that Boggs, via Aston, was aware the Commonwealth did not intend to pursue the death penalty prior to the entry of his guilty plea. N.T., 12/13/18 at 4-6.

- 14 -

The trial court found Aston and Peck's testimony regarding the death penalty to be credible. See Spotz, 18 A.3d at 259. Further Boggs has never presented one drop of evidence that Aston "colluded" with Peck to use the death penalty as a bargaining chip to unlawfully coerce him into pleading guilty. Accordingly, Boggs fails to establish that counsel was ineffective by inducing him to plead guilty due to the threat of the death penalty. See Keaton, 45 A.3d at 1106; Moser, 921 A.2d at 531. Thus, Boggs' fourth issue also lacks merit.

In his sixth issue, Boggs presents a lone paragraph of argument wherein he claims that his guilty plea counsel was ineffective for failing to investigate his mental health prior to his guilty plea. He fails to indicate what mental health condition he had at the time of his plea and how such condition would have rendered his plea unintelligent or involuntary.

"With regard to an attorney's duty to investigate [a defendant's mental health], …the reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." Commonwealth v. Willis, 68 A.3d 997, 1002 (Pa.Super. 2013) (citation omitted) (holding that plea counsel was not ineffective for failing to further investigate the defendant's mental health where defendant represented during his plea colloquy that he was not under the influence and was not impeded in any way).

Likewise, in the instant case Boggs denied any mental health problem during his guilty plea colloquy and in his written guilty plea petition. N.T.,

9/11/15 at 40-42. In fact, he indicated that plea counsel had done quite well for him and that there was nothing plea counsel failed to do that he had requested. Id. Moreover, Boggs engaged in rational and intelligent exchanges with both his guilty plea counsel and the trial court during his plea hearing. Thus, we conclude that the PCRA court did not err by determining that guilty plea counsel was not ineffective for failing to investigate Boggs' mental health prior to his guilty plea. See Willis, 68 A.3d at 1002.

Next, in his seventh issue, Boggs once again presents a minimally developed issue wherein he appears to contend that his guilty plea counsel was ineffective for failing to present "mitigation evidence" on his behalf. To this end, Boggs cites Lesko, 15 A.3d at 380 for the proposition that counsel can be deemed ineffective for failing to present mitigation evidence to counter evidence of aggravating circumstances in the context of a capital case. However, in this case, the Commonwealth never filed a notice of aggravating circumstances as the death penalty was not pursued. Thus, Boggs' argument regarding mitigation evidence and guilty plea counsel is factually inapposite and this issue is also devoid of merit.

Lastly, Boggs avers, in his eighth issue, that the trial court did not properly apprise him of the elements of the crimes he was charged with during his guilty plea colloquy. Further, he argues that the trial court failed to explain that the Commonwealth had the right to have a jury determine his degree of guilt if he were to plead guilty to murder generally.

To be valid, a guilty plea must be knowing, intelligent, and voluntary. Commonwealth v. Pollard, 832 A.2d 517, 522 (Pa.Super. 2003). The court therefore must conduct an on-the-record inquiry to determine whether the plea is voluntarily and understandingly tendered. Commonwealth v. Hodges, 789 A.2d 764, 765 (Pa.Super. 2002) (citing Pa. R.Crim.P. 590(a)). The court must develop a record that affirmatively shows that the defendant understands: (1) the nature of the charges to which the defendant is pleading guilty; (2) the factual basis for the plea; (3) the right to a jury trial; (4) the presumption of innocence; (5) the permissible ranges of potential sentences and fines; (6) that the court is not bound by the terms of the agreement unless it accepts it; and (7) that the Commonwealth has a right to have a jury decide the degree of guilt if the defendant pleads guilty to murder generally. Comment, Pa.R.Crim.P. 590; see Commonwealth v. Kelley, 136 A.3d 1007, 1013 (Pa.Super. 2016).

Here, as noted above, the trial court engaged in a comprehensive colloquy of Boggs encompassing, inter alia, the nature of the charges at issue. N.T., 9/11/15 at 28-29. Therefore, Boggs argument that the trial court failed to apprise him of the same is without merit. Likewise, Boggs' contention that the trial court failed to inform him that the Commonwealth could request a jury to determine his degree of guilt if he pleaded guilty to murder generally is of no moment. Boggs' did not plead guilty to murder generally but to first- and third-degree murder specifically. Thus Boggs' argument to the contrary is devoid of any merit.

- 17 -

Accordingly, based on the forgoing, we hold that the PCRA court properly denied Boggs' PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2020